# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

NAJAT SANAD, et al.,

           Plaintiffs,        Case No. 2:07-cv-00587-PMP-GWF

vs.         **ORDER**

BERNINI, INC., et al.,

           Defendants.

This matter is before the Court on Plaintiff's Ex Parte Application for Order to Show Cause Why A Prejudgment Writ of Attachment With Notice Should Not Issue And Appointment Of A Receiver (#12), filed on September 19, 2007; Defendants Corrected Opposition to Plaintiff's Ex Parte Application for Order to Show Cause Why A Prejudgment Writ of Attachment With Notice Should Not Issue And Appointment Of A Receiver (#16), filed on September 26, 2007, and Plaintiff's Reply In Support of Ex Parte Application for Order to Show Cause Why A Prejudgment Writ of Attachment With Notice Should Not Issue And Appointment Of A Receiver (#17), filed on September 26, 2007. Also before the Court is Defendants' Motion for Leave to File Surreply and Defendants' Surreply to Plaintiffs' Reply in Support of Ex Parte Application for Order to Show Cause Why a Prejudgment Writ of Attachment with Notice Should Not Issue (#18), filed September 27, 2007.

## BACKGROUND AND DISCUSSION

Plaintiffs Najat Sanad, Ousman Gueye and Abdel Kadar Elouti filed this action on May 3, 2007 against Defendants Bernini, Inc., a California corporation and Bernini Holdings, a California

1  corporation (collectively referred to as Defendant), alleging claims for failure to pay overtime wages,
2  etc., under Nevada Revised Statute (NRS) Chapter 608 and in violation of the Fair Labor Standards Act
3  29 U.S.C. § 201, *et. seq.* Plaintiffs seek to pursue a class action on behalf of Nevada-based employees,
4  and Plaintiffs allege a collective action under 29 U.S.C. § 216(b) on behalf of similarly situated
5  employees nationwide.  Plaintiffs' complaint seeks recovery of damages, restitution, and declaratory
6  and injunction relief.  At this point, a class action has not been certified.  Nor have other employees,
7  allegedly similarly situated, opted in as parties plaintiff in the collective action.  The extent to which
8  this action may or will proceed as a class action under Fed.R.Civ.Pro. 23, or as a collective action under
9  29 U.S.C. § 216(b), has not been determined.

10  Plaintiffs have applied for issuance of a writ of attachment after notice and hearing pursuant to
11  NRS 31.013.  NRS 31.013.3 provides that the court may, after notice and hearing, order the clerk to
12  issue a writ of attachment in any case where the court finds that extraordinary circumstances exist
13  which will make it improbable for the plaintiff to reach the property of the defendant by execution after
14  the judgment has been entered.  NRS 31.017.4 and 5 also provide that the court may order a writ of
15  attachment to be issued without notice only in an action by a resident of this state where the defendant
16  is about to remove his money or property, or any part thereof, from this state and the defendant's
17  property which may remain in this state, if any, will be insufficient to satisfy plaintiff's claim; or where
18  the defendant is about to give, assign, hypothecate, pledge, dispose of or conceal his money or property
19  or any part thereof, and the defendant's property or money remaining in the state or that remaining
20  unconcealed will be insufficient to satisfy plaintiff's claim.  The grounds for issuance of a writ of
21  attachment without notice are presumably also grounds for an application for issuance of a writ of
22  attachment after notice and hearing.

23  NRS 31.020 provides that an application for a writ of attachment must be accompanied by an
24  affidavit of the plaintiff or of any other person having personal knowledge of the facts.  The affidavit
25  must set forth clearly the nature of plaintiff's claim for relief and that the same is valid, and describe in
26  reasonable and clear detail all facts which show one or more grounds for attachment.   NRS 31.024
27  provides that if the plaintiff's affidavit, alone or as supplemented by additional evidence received by the
28  court, meets the requirements of NRS 31.020, the court shall issue an order directed to the defendant or

1  debtor to show cause why the order for attachment should not be issued.  A conclusory affidavit,
2  however, provides no basis for a court to issue a writ of attachment.  *Paramount Insurance v. Rayson &*
3  *Smitley*, 86 Nev. 644, 650, 472 P.2d 530 (1970).
4        In their Application for Order to Show Cause Why A Prejudgment Writ of Attachment With
5  Notice Should Not Issue And Appointment Of A Receiver (#12), and in their Reply (#17) filed in
6  response to the Defendant's Opposition (#16), the three Plaintiffs allege that they are entitled to recover
7  approximately $25,000, each, under their FSLA claims.  Plaintiffs' counsel further alleges that the total
8  amount of the FSLA claims will be $8 million to $10 million if the class action is certified and/or other
9  similarly situated plaintiffs opt-in to the collective action.  Neither the affidavit of Plaintiffs' counsel
10  attached to the Application (#12) nor the affidavit of Plaintiff Gueye submitted with their Reply (#17),
11  set forth admissible factual information that would reasonably demonstrate that their claims are valid.
12  Rather, the application and affidavits are generalized allegations that Defendant has failed to pay
13  overtime pay to Plaintiffs or committed other violations of Nevada and federal law.  The Reply brief
14  and affidavits attached thereto can best be described as an attempt to assassinate the character of the
15  Defendant and its officers through generalized allegations regarding their dishonest business practices.
16  These allegations are not sufficient to demonstrate the validity of Plaintiffs' claims for purposes of
17  issuing a writ of attachment.  Additionally, Plaintiffs' Application has not provided the Court with
18  factual information regarding the number of employees who may be involved in the putative class or the
19  potential number of collective action employees who may potentially opt-in to this action.  The
20  potential class or collective action at this point and the amount of damages that may ultimately be
21  recoverable in this case is speculative and conjectural.
22        Plaintiffs allege that Defendant will likely transfer and/or conceal assets such that it will be
23  improbable, if not impossible, for Plaintiffs to execute on a judgment.  Plaintiffs also allege that there
24  "are strong suggestions" that Defendant is about to give, assign, hypothecate, pledge, dispose of or
25  conceal money or property to frustrate Plaintiffs' ability to collect a judgment.  In support of these
26  allegations, Plaintiffs cite three alleged facts: (1) that since the inception of this action, Defendant has
27  closed one of its stores in Las Vegas, Nevada, (2) that Defendant's corporate status in Nevada is in
28  default, and (3) that during a settlement conference or discussion, Defendant's local counsel stated that

Defendant was planning to file bankruptcy. Although these factual allegations, if true, would give rise to a suspicion that Defendant might transfer or conceal its assets, the allegations, in themselves, do not satisfy the Court that Defendant is attempting to transfer or conceal its assets to avoid payment of a potential judgment in this case.

Without waiting for the Court to decide whether to issue an order to show cause on Plaintiffs' Application, Defendant has responded for purposes of refuting Plaintiffs' Application and to also request that the Court sanction Plaintiffs' counsel pursuant to 28 U.S.C. § 1927 for filing a frivolous application for a writ of attachment   In its Opposition (#16), Defendant acknowledges that it has closed one of its Las Vegas stores, but states that it did so involuntarily because the landlord terminated its lease. Defendant also states that it engaged in litigation with the landlord regarding the termination. Defendant states that it continues to operate its other stores in Las Vegas and has transferred its inventory from the closed store to the other store locations in Las Vegas.  The second Defendant states that it is in good standing as a foreign California corporation and has attached more current documentation from the Nevada Secretary of State that shows that its corporate status is in good standing. Defendant further states that the "default" on which Plaintiffs rely resulted from an inadvertent error by Defendant in not filing its current list of officers which has since been corrected. Finally, Defendant disputes the assertion that its counsel informed Plaintiffs' counsel that Defendant intends or is planning to file bankruptcy, thereby suggesting its insolvency.

Plaintiffs' Reply argues that the Court should not accept Defendant's representations because of its dishonest conduct. Plaintiffs have not, however, refuted the information provided by Defendant regarding the circumstances regarding the closure of one of its stores, that it still operates other stores with substantial real property and personal property value or that Defendant is an active corporation in compliance with Nevada law. Counsel continue to dispute what Defendant's local counsel stated regarding Defendant's alleged intention to file bankruptcy.

Based on the information provided, the Court finds that Plaintiffs have failed to provide the Court with sufficient evidence in its Application or in its Reply for the Court to order Defendant to show cause why a writ of attachment should not issue. Plaintiffs' Application and affidavits do not sufficiently demonstrate to the Court that their claims against Defendant are valid or that the claims

1  have or will have value of $8 million to $10 million.  While this may be a case in which substantial
2  damages will be alleged based on numerous claimants, it may also be a case in which only three
3  claimants with claims totaling approximately $75,000 are litigated.  Plaintiffs have also failed to
4  sufficiently demonstrate by affidavits based on personal knowledge that extraordinary circumstances
5  exist to support the issuance of a writ of attachment based on information that Defendant is about to
6  remove its money or property, or any part thereof, from this state or is about to give, assign,
7  hypothecate, pledge, dispose of or conceal its money or property or any part thereof.

8  Given this, Plaintiffs have also not met the even greater showing required for this Court to grant
9  the request for appointment of a receiver.  *Bowler v. Leonard*, 70 Nev. 370, 269 P.2d 833, 841-42
10  (1954).  As *Bowler* states, receivership is generally a remedy of last resort.  Absent an adequate
11  showing that good cause exists for this Court to issue an order to show cause for attachment on the
12  grounds that Defendant is about to transfer or conceal its assets to render a judgment uncollectable, the
13  Court also finds no grounds at this time for the appointment of a receiver.  The Court also finds that
14  Plaintiffs have not demonstrated sufficient facts at this time that would justify the entry of an order
15  permitting Plaintiffs to conduct special discovery to explore Defendant's financial condition.  Again,
16  the conclusory assertions made by Plaintiffs in their Application and Reply fail to make a sufficient
17  showing for this Court to issue an order to show cause why a writ of attachment should not issue.  Such
18  allegations are likewise insufficient to support the issuance of an order permitting a party to engage in
19  discovery regarding Defendant's financial condition.

20  In regard to Defendant's counter-motion for sanctions under 28 U.S.C. § 1927, the Court is
21  frankly disturbed both by the insufficiency of Plaintiffs' application and by Plaintiffs' counsel's failure
22  in the Application to disclose to the Court the preceding "letter war" between counsel regarding
23  Defendant's counsel's alleged statements that Defendant intends to file bankruptcy.  Since that
24  statement formed one of the alleged factual grounds for Plaintiffs' application, Plaintiffs' counsel had
25  an ethical obligation to provide the Court with reasonably complete information known to him
26  regarding this disputed statement.  Secondly, Plaintiffs' Reply (#17) essentially asks this Court to issue
27  an order to show cause why a writ of attachment should not issue on the basis that Defendant is a
28  dishonest and racist business which cheats its employees and customers.  These assertions, however, are

based on nothing more than the unsupported allegations contained in Plaintiff Gueye's affidavit which relies, in part, on a hearsay complaint by a customer who was reportedly defrauded by Defendant. Plaintiffs also submit a police report regarding an alleged battery committed on Plaintiff Sanad by one of Defendant's security officers and the allegation that Defendant's store manager was caught attempting to delete security tapes.  This is not admissible evidence to prove the truth of the allegations contained therein and obviously does not provide the Court with grounds to issue an order attaching Defendant's property based on a generalized conclusion that it is a dishonest or racist business. Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' Ex Parte Application for Order to Show Cause Why A Prejudgment Writ of Attachment With Notice Should Not Issue And Appointment Of A Receiver (#12) is **denied**.

**IT IS FURTHER ORDERED** that the Court hereby sets this matter for hearing on **Wednesday, October 11, 2007  at 9:30 a.m. in Courtroom 3A** on Defendants' counter-motion for sanctions (#16).

**IT IS FURTHER ORDERED** that Defendants' Motion for Leave to File Surreply and Defendants' Surreply to Plaintiffs' Reply in Support of Ex Parte Application for Order to Show Cause Why a Prejudgment Writ of Attachment with Notice Should not Issue (#18) is **denied.**

DATED this 28th day of September, 2007.

_____
GEORGE FOLEY, JR.
United States Magistrate Judge